220 So.2d 241 (1969)
Ruby Yvonne OGDEN
v.
John Randolph OGDEN.
No. 7715.
Court of Appeal of Louisiana, First Circuit.
March 10, 1969.
*242 Ashton L. Stewart, of Laycock & Stewart, Baton Rouge, for appellant.
Fred H. Belcher, Jr., of McCollister, Belcher, McCleary & Fazio, Baton Rouge, for appellee.
Before LANDRY, SARTAIN and MARCUS, JJ.
LANDRY, Judge.
This appeal by plaintiff Ruby Yvonne Ogden, mother of four children, ages 5, 7, 9 and 10 years, respectively, requires our review of the lower court judgment granting visitation privileges to defendant-father, John Randolph Ogden, incident to a divorce proceeding wherein permanent care, custody and control of the children were awarded plaintiff. The lower court, inter alia, gave defendant visitation rights as respects the three younger children on the first and third week ends of each month from 6:00 P. M. Friday, until 6:00 P. M., Sunday, to take them from their home in Lafayette, Louisiana, to defendant's residence in Baton Rouge, Louisiana. Identical visiting privileges were accorded as regards the older child excepting that her trips to Baton Rouge were restricted to the third week end of each month only.
Appellant's sole complaint is that granting of visitation privileges with respect to the three younger children on first and third week ends each month from Friday to Sunday afternoon amounts to "split" or "divided" custody and this aspect of defendant's visitation rights should be reduced to one week end per month for all of the children. We find appellant's point well taken and amend the judgment of the trial court accordingly.
Plaintiff was granted a judicial separation from defendant on June 7, 1966, and a final divorce on August 23, 1967. Both decrees granted plaintiff custody of the four children of the marriage whose present ages are as above indicated. In addition, both judgments accorded defendant-father reasonable visitation privileges.
*243 From the date of the divorce until some time during the summer of 1968, visitation privileges exrcised by defendant created no problems between the ex-spouses. During this interval defendant was permitted most liberal visitation rights and exercised them regularly and freely with plaintiff's apparent consent and approval. During the summer of 1968, however, some disagreement arose concerning defendant's visitation rights. There resulted a rule taken by defendant in September, 1968, ordering plaintiff to show cause why defendant's visiting privileges should not be fixed according to a schedule set forth by defendant. Upon trial of the rule, judgment resulted setting defendant's visitation rights as above indicated and additionally as follows: (1) All of the children for three weeks during the summer months, beginning in the summer of 1969; (2) all of the children for three days during the Thanksgiving holidays and five days during the Christmas holidays, commencing at 5:00 P. M. Christmas Day, and (3) reasonable visitation rights in appellant's home in Lafayette, Louisiana.
After these parties separated, plaintiff resided in the home of her parents in Monroe, Louisiana, until August, 1966, at which time plaintiff moved with her children and established a home in Lafayette, Louisiana, where plaintiff has resided since and attended college. It is virtually undisputed that during the time plaintiff resided in Monroe and until the summer of 1968, defendant was accorded most liberal visitation privileges and was in fact encouraged by plaintiff to visit the children regularly and frequently, which defendant did. It further appears that from September, 1966, to about March, 1968, defendant's brother, Guy Powers Ogden, resided in Lafayette, during which same period defendant made frequent business trips to that city in connection with a theater interest he held there. In this interval defendant visited the children virtually every other week end, picking them up Saturday morning and taking them to the home of his brother and returning them to their mother in the evening after having taken them to movies and on outings of various sorts. Again on Sunday mornings defendant would get the children, take them to church, keep them until the afternoon or evening and return them to their home. In March, 1968, however, defendant's brother moved from Lafayette and a change took place in defendant's business arrangements which eliminated the necessity of defendant's periodic visits to Lafayette. From March until late summer of 1968, defendant with more or less regularity picked up the children in Lafayette every other Friday afternoon, transported them to his home in Baton Rouge and returned them to Lafayette Sunday evening.
Beginning in early 1968, defendant, on his visits to the children in Lafayette, was frequently accompanied by his then secretary whom defendant married in June of 1968. After defendant's second marriage, the present Mrs. Ogden almost always accompanied her husband on his trips to Lafayette to pick the children up for their visits to Baton Rouge.
Shortly before commencement of the school term in September, 1968, plaintiff threatened to reduce the frequency of the Baton Rouge visits from two to one week end each month whereupon defendant filed the previously mentioned rule to fix his visitation privileges which resulted in rendition of the decree herein appealed.
This controversy is concerned solely with the frequency of the children's visits to their father in Baton Rouge. No other aspect of the trial court's determination is at issue herein. Neither is the fitness of either parent a matter of contention. On the contrary, it is conceded by both parties that the children are well cared for while in the company of the other parent. Moreover, there is no question but that both parents love their offspring dearly and consider the welfare and happiness of the children their chief concern.
It is settled law that in the event of divorce or separation of parents with *244 the consequent awarding of custody of children of the marriage to one parent, the other parent has the right of access to the children. This privilege of access is subject to such reasonable restrictions as the circumstances warrant within the discretion of the court. Said privilege may not be denied unless the parent has forfeited same by his conduct or the exercise thereof be injurious to the children's welfare. Johnson v. Johnson, 214 La. 912, 39 So.2d 340.
Equally well established is the rule that in cases of this nature the paramount issue is the welfare of the children concerned, which consideration dictates that the control of the spouse granted custody be an undivided authority. Consequently visitation privileges accorded the spouse not having custody should never be so extensive or liberal as to constitute a divided authority or shared control of the children concerned.
As aptly observed by the Supreme Court in Newson v. Newson, 176 La. 694, 146 So. 472, custody should be given to one spouse, not alternatively to each inasmuch as the latter situation is not conducive to a child's welfare but rather is likely to prove injurious to a child's future well being.
In resolving issues of this nature much discretion and latitude is accorded the trial court whose judgment is entitled to great weight and will not be set aside unless it amounts to an abuse of its discretion under the circumstances of each particular case. Johnson v. Johnson, supra.
Counsel for appellant contends, mainly on authority of Pierce v. Pierce, 213 La. 475, 35 So.2d 22, that bi-monthly visits from Friday to Sunday evening are excessive and amount to divided custody. We note that in the Pierce case, supra, visitation rights were granted each week end. On the other hand, counsel for defendant argues that in Vinet v. Vinet, La.App., 184 So.2d 33, visitation privileges every other week end granted a father with respect to his nine year old daughter, was recently held by the Fourth Circuit to not constitute divided custody. We observe that in the Vinet case, supra, the distances between the residences of the parents is not shown. We assume from the reported facts therein that the parents both lived in New Orleans. Moreover, the frequency and duration of the week end visits in Vinet, supra, were not shown to have resulted in emotional problems for the child concerned. In the instant matter, we note judicially that the highway distance between Lafayette and Baton Rouge is approximately 75 miles. Each visit of the Ogden children involves a round trip automobile ride of approximately 150 miles.
In the case at bar plaintiff testified the visits on first and third week ends are doubly upsetting to the children. They view the trip with either anticipation or dismay in preparing to leave and return home Sunday night "all wound up" thus requiring some time for returning to normal and making proper preparation for school the following morning. Besides, according to plaintiff, the frequency of the visits has resulted in problems of discipline, especially with regard to the eldest child, Vondel, who is currently experiencing emotional problems. Because of Vondel's said condition, Mrs. Ogden stated she has placed the child under treatment of Dr. C. E. Hamilton, a pediatrician, who has attended all the children for approximately two years. Plaintiff testified further that the visits have created an unstable environment in which they are torn between loyalty to their parents. Finally, according to plaintiff, the burden of frequent packing and travel has become somewhat of an ordeal to the children and deprives them too frequently of contact with their friends at home.
According to defendant, the children enjoy their visits to Baton Rouge where they stay with defendant and his present spouse, all concerned living together as a family. Defendant related each child has a room in *245 defendant's commodious and comfortable home, each child referring to his assigned room as "my room". Defendant frankly concedes he and the present Mrs. Ogden encourage the children to refer to the latter by her first name, Eileen, or any other name the children prefer and, as a result, the children at times refer to their stepmother by her given name or either as "mommy" or "mother" as they are so inclined.
Testifying by deposition, Dr. Hamilton stated in effect he thought the frequency of the Baton Rouge visits was disruptive of the normal routine of all the children. He considered the abrupt change in home environment attending each trip conducive to an unstable home atmosphere for the children. He was particularly concerned about the effect on the eldest child, Vondel, who was under his care for emotional problems which he felt would continue for a "few months". Dr. Hamilton was of the further view it was not in the best interest of the children to separate them on the week ends that Vondel did not go to Baton Rouge. In his opinion, the visits should on each occasion include all of the children. In effect Dr. Hamilton could not ascribe Vondel's emotional difficulties to the visits to Baton Rouge. He was, however, of the opinion that in any event the visits should be curtailed in the best interest of all the children.
Dr. William Cloyd, psychiatrist, examined Vondel on October 3 and 21, 1968, preparatory to testifying as an expert witness on the hearing of this matter. He did not see any of the other children. Dr. Cloyd found Vondel suffering from a certain degree of anxiety concerning her home and family circumstances as they stood.
We are in agreement with the decision in Vinet v. Vinet, supra, under the facts therein obtaining. We find, however, the circumstances in the case at hand demand a different result in the best interest of the children herein concerned is to be the prime factor in deciding this controversy. In the case before us we are confronted with visits of such frequency and duration as to upset the children concerned and produce a certain amount of emotional disturbance. The twice monthly visits to Baton Rouge involve advance planning and preparation of such degree as to be somewhat of a burden upon the children. This it appears, has led to some degree of emotional disturbance to each of the children concerned. In the Vinet case, supra, since both parents apparently resided in the same city, there would not be week end separation from neighborhood and school friends as must exist in the case at hand. Additionally, there is the travel factor which we consider of some importance. In effect, the Ogden children have two homes, a circumstance which can only confuse them and lead to an undesirable division of parental authority which is to be avoided in their own best interest. Another factor which has greatly influenced our decision herein is the circumstance that defendant has virtually unlimited visitation privileges with the children in their home town of Lafayette, Louisiana. There he is permitted to see them on week ends without removing them so far from their home environment and friends.
Despite the great weight accorded the judgment of the trial court in matters of this character, we conclude our brother below erred in awarding defendant visitation privileges on the first and third week ends as shown. We point out that visitation and custody decrees are never final and may be re-examined at any time. Nevertheless, it is elementary that each case must be determined in the light of its own peculiar facts and circumstances.
Considering the particular aspects of the case at hand and its own attending situation, we conclude that visitation rights granted defendant to have the three younger children on the first and third week ends of each month is tantamount to divided custody. We so find because, in our view, the record reflects that in effect the children concerned have two homes.
*246 It is therefore ordered, adjudged and decreed the judgment of the lower court be and the same is hereby amended and revised in that the right of visitation accorded defendant John Randolph Ogden with respect to the visits of his minor children, Margaret Vondel Ogden, Coleen Cole Ogden, Frances Warren Ogden and John Randolph Ogden, Jr., to defendant's home in Baton Rouge, Louisiana, is limited and restricted as regards all said children, to the third week end of each month from 6:00 P. M. Friday until 6:00 P. M. Sunday, commencing the third week end of the month following the month in which this decree becomes final.
It is further ordered, adjudged and decreed that except as herein expressly amended and revised, the judgment of the trial court herein appealed shall remain in full force and effect. All costs of these proceedings to be paid by appellee John Randolph Ogden.
Amended and rendered.